UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAMARA COX,

    Plaintiff,

v.                                                CASE NO: 8:09-cv-563-T-26TBM

CITY OF TAMPA,

    Defendant.
                                         /

**O R D E R**

Before the Court is Defendant's Motion for Summary Judgment (Dkt. 25), Defendant's Unilateral Statement of Undisputed Facts (Dkt. 26), the deposition of Plaintiff Tamara Cox and exhibits (Dkts. 27 & 32), the affidavits of Herbert Bush and Richard Garvin (Dkts. 28 & 29), Plaintiff's Response in Opposition with exhibits attached (Dkt. 35), the depositions of Kimberly Crum, Herbert Bush, and Constance Leggon-Blue (Dkts. 36, 37 & 38), and the affidavits of Tamara Cox. (Dkts. 39 & 40). After careful consideration of the submissions of the parties and the entire file, the Court concludes that summary judgment should be granted in favor of Defendant in this case brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12112(a) (2008).[1]

---

[1] As Defendant correctly asserts, the American with Disabilities Amendments Act (ADAA) did not become effective until January 1, 2009, which was after the events giving rise to this lawsuit. (Dkt. 25, p. 9). The Eleventh Circuit has held, at least in one case, that the ADAA does not apply retroactively. Fikes v. Wal-Mart, Inc., 322 Fed.

## INTRODUCTION

A long-time employee of the Defendant, Plaintiff claims she was discriminated against under the ADA for being perceived as having a disability in 2007 and 2008, and for retaliation. She claims she could have returned to full-time work in 2007 after shoulder surgery based on her ability to lift files overhead. She claims she was not allowed to return to work because she was perceived by the Defendant as having a disability and because she had filed a prior charge of racial discrimination in 2006.

## PERTINENT FACTS

Plaintiff Tamara Cox has worked for the City of Tampa Police Department since 1985. (Dkt. 27, p. 5). She has always worked as a Police Records Clerk, which was later reclassified as a Police Data Terminal Operator. (Dkt. 27, p. 5). She worked in the forensics unit from 1996 until 2008, when she moved to the records department with all of the other data terminal operators. (Dkt. 27, pp. 8–10). Her duties include inputting data and filing documents in a cabinet approximately six feet high which requires overhead lifting. (Dkt. 27, pp. 43-44; Dkt. 37, pp. 44-46).

*First Charge of Discrimination*

Plaintiff's first formal complaint occurred in 2006 when she filed a charge of racial discrimination against Defendant with the United States Equal Employment Opportunity Commission (EEOC). (Dkt. 27, pp. 12-13). The basis for her charge was a comment

---

Appx. 882, 883 n. 1, (11th Cir. 2009) (unpublished opinion).

written on the back of her perfect evaluation (60 points out of 60 possible) by Major George McNamara that he did not concur with her evaluation. (Dkt. 27, pp. 12-14). The EEOC complaint was dismissed. (Dkt. 27, p. 15).

*Left Shoulder Surgery and Subsequent Leave of Absence*

Over the course of Plaintiff's employment, she received injury to both shoulders. She injured her left shoulder in particular while on the job in December 2004. (Dkt. 27, p. 23). After receiving physical therapy through workers' compensation, she finally underwent surgery to repair her left shoulder in June 2007. (Dkt. 27, pp. 52-53). Her surgeon and treating physician was Dr. Michael Wasylik, an orthopedic surgeon who was approved by workers' compensation. (Dkt. 27, pp. 23, 27-28 & Exh. 5, Exh. 4, p. 2). A review of his notes from August 2007 through December 2007 reveals that she persistently complained of pain over the four-month period, that she should see Dr. Alexander for a second opinion, and that she did not feel that she could work in September 2007. (Dkt. 27, Exh. 5). Plaintiff also testified at her deposition that she could not use her left arm in September 2007. (Dkt. 27, p. 34).

In keeping with Dr. Wasylik's recommendation, Dr. Vladimir Alexander, an orthopedic surgeon also approved by workers' compensation, examined Plaintiff in November 2007. (Dkt. 27, p. 31, Exh. 6). Dr. Alexander's report dated November 15, 200,7 provides as follows:

> Ms. Cox returns today with her MRI studies. Her symptoms are as previous. She initiates the conversation today telling me how disappointed she is that I returned her to light duty

> work with no use of the left upper extremity at the last visit. . . . She is at MMI from my stand point, PPI rating is 0% as I have nothing further to offer her. She is welcome to follow up with an orthopedic surgeon of her choice. Until then she can resume full duty work.

(Dkt. 27, Exh. 6). Despite this report, Plaintiff testified at her deposition that Dr. Alexander did not have the authority to return her to work because he was not her treating physician. (Dkt. 27, p. 37).

At a visit to Dr. Wasylik on December 11, 2007, according to both Dr. Wasylik's notes and Plaintiff, she requested to return to work. (Dkt. 27, pp. 32, 34 & 38, Exh. 5). At that time, Dr. Wasylik reported that she had reached maximum medical improvement (MMI), that she had sustained five percent permanent impairment, and that she could return to work "[a]s long as she is not lifting above her head." (Dkt. 27, Exh. 5).

On January 14, 2008, Defendant sent the following letter to Plaintiff:

> Article 13.6.1 of the A.T.U. Contract provides that an employee is placed on Workers' Compensation Leave of Absence after having reached maximum medical improvement or after six months of temporary total disability and has not been able to perform the duties of his/her assigned position. This leave of absence enables an employee to continue to recuperate and or seek a position for which he/she is physically able to perform.
>
> According to the documentation from your physician, ***you reached Maximum Medical Improvement with a 5% impairment rating*** on December 12, 2007. ***You also have a permanent restriction of no overhead lifting.*** Therefore, you will be placed on Workers' Compensation Leave of Absence effective January 14, 2008. Your leave of absence will expire on July 14, 2008. ***Please contact Linda Fessell, Recruiting***

> *and Testing, at 274-8911 so that she may assist you in seeking another position.*

(Dkt. 27, Exh. 8) (emphasis added). It is undisputed that Plaintiff did not apply for other positions in accordance with the Defendant's letter. (Dkt. 27, pp. 20-21 & 40). Plaintiff testified at deposition that she did not do so because she felt she was physically capable of performing her current position. (Dkt. 27, p. 42). Plaintiff testified that this was the very first notification that she was permanently restricted from overhead lifting. (Dkt. 27, p. 40).

After receiving the letter, on January 15, 2008, Plaintiff contacted Kimberly Crum, according to her deposition testimony. (Dkt. 27, pp. 21-22). Plaintiff asked Ms. Crum why she was not allowed to use a stool. (Dkt. 27, p. 21-22). Ms. Crum referred Plaintiff to Larry Frassrand, Loss Prevention Supervisor for Defendant's Risk Management Division, who then asked Plaintiff to write a letter regarding any accommodation she was requesting to return to work. (Dkt. 27, p. 20). Plaintiff's attorney wrote the following letter to Defendant on January 16, 2008:

> Please consider this letter as notice of our intent to pursue litigation against you the employer. The claimant has stopped working with you as the City appears to be unwilling to allow her to return to work, despite her release from Dr. Wasylik. Your willful failure to allow her to return to work within her work restrictions may result in a retaliatory conduct claim under §440.205, Florida Statutes. That section provides that "No employer shall discharge, threaten to discharge, intimidate, or coerce an employee by reason of such employee's valid claim for compensation or attempt to claim compensation." Her employer's conduct also may violate the

>           ADA for a refusal to provide her with a reasonable
>           accommodation.
>
>           Please offer Mrs. Cox a position with her restrictions of no
>           overhead lifting as indicated by Dr. Wasylik in the attached
>           note.

(Dkt. 27, Exh. 9). This letter, as acknowledged by Plaintiff, does not request the use of a stool to assist with overhead lifting. (Dkt. 27, p. 42).

According to Plaintiff's supervisor, Herbert Bush, Plaintiff also contacted Mr. Bush and demanded to know why she was not allowed to return to work. (Dkt. 28, para. 4). Mr. Bush told Plaintiff that Risk Management had made the decision. (Dkt. 28, para. 4). When Plaintiff again contacted him the next day, she became adamant about returning to work, and Mr. Bush alerted the Tampa Police Department. (Dkt. 28, paras. 4-5). Once notified, a photograph of Plaintiff was placed in the reception area so that the proper procedures would be followed if she attempted to gain access to the building. (Dkt. 28, para. 5). Her personal belongings were unlocked and packed up for her retrieval. (Dkt. 28, para. 5).

On March 10, 2008, Plaintiff visited the referred workers' compensation physician, Dr. Bhupendra Kumar Gupta, who found Plaintiff's requests to be self-contradictory. (Dkt. 27, Exh. 4, p. 3). Dr. Gupta noted that while she asked for more surgery to repair her left shoulder due to the pain, she contemporaneously demanded that no restrictions as to lifting be placed on her at work. (Dkt. 27, Exh. 4, p. 2-3). Even on the issue of restrictions she continued to change her mind during the visit. (Dkt. 27, Exh.

4, p. 2). Dr. Gupta filled out the DWC-25 form. (Dkt. 27, Exh. 4, p. 3). Dr. Gupta's report indicated that Plaintiff could return to work with a functional limitation of no reaching overhead. (Dkt. 27, Exh. 4).

The workers' compensation judge ordered an expert medical advisor (EMA) examination which took place on May 28, 2008. (Dkt. 27, Exh. 11). Dr. James Melton examined Plaintiff who told him that she was able to lift the smaller files above her head and use a small step stool. (Dkt. 27, Exh. 11, pp. 1 & 3). Plaintiff told him that she felt she could return to work and perform the usual duties of her job on a full-time basis. (Dkt. 27, Exh. 11, p. 1). Plaintiff told him that she had consulted Dr. Seth Gasser, an orthopedic surgeon, on January 23, 2008, who told her that she had a partial tear of the rotator cuff. (Dkt. 27, Exh. 11, p. 2). Dr. Melton advised Plaintiff that she could undergo surgery, however, there was no guarantee of improvement after the surgery. (Dkt. 27, Exh. 11, p. 2). Plaintiff told Dr. Melton that she would like to undergo the surgery with Dr. Gasser. (Dkt. 27, Exh. 11, p. 5). Dr. Melton did not feel that Plaintiff was at MMI. (Dkt. 27, Exh. 11, p. 6). Based on Dr. Melton's report, Plaintiff was allowed to return to work, which she did. (Dkt. 27, p. 8). Plaintiff's leave of absence on workers' compensation lasted until June 23, 2008, and she received compensation for the entire period. (Dkt. 27, pp. 52-53 & 56, Exh. 3, p. 2, Exh. 15).

*Second Charge of Discrimination*

Plaintiff filed a second EEOC complaint in 2008, which involved her April 2007 evaluation. (Dkt. 27, pp. 15-17). She asserted retaliation in her second charge, asserting

that her 2007 evaluation was lower due to retaliation for her having filed the 2006 EEOC charge. (Dkt. 27, pp. 15-16). Plaintiff still received an "excellent" grade on her 2007 evaluation, but her point total was 56 rather than 60. (Dkt. 27, pp. 16; Dkt. 29 at para. 4). Mr. Garvin, her supervisor at the time, avers that she did not receive the full 60 points, which would have been "outstanding," because she did not follow the proper chain of command for making internal complaints. (Dkt. 29 at para. 4). Mr. Garvin avers that she took her complaints directly to the Assistant Chief of Police rather than her immediate supervisors. (Dkt. 29 at para. 4). She also asserted in this charge that she was denied a reasonable accommodation on January 14, 2008. (Dkt. 27, p. 17).

## ANALYSIS

Plaintiff asserts that she was perceived as being disabled when she desired to return to work in late 2007 through June 2008. Plaintiff alleges she could perform the essential functions of her job with or without reasonable accommodations and takes the position that she was not disabled. Plaintiff claims that Defendant denied her the use of a stool as a reasonable accommodation. With respect to the retaliation claim, Plaintiff asserts that Defendant placed her on worker's compensation leave because she filed the 2006 charge of discrimination. She claims retaliation occurred again when Defendant lowered her scores on her 2007 performance evaluation. The third occurrence of retaliation occurred when Defendant posted her photograph at the reception desk and broke the locks on her desk to permit the staff to gather her personal belongings. (Dkt. 27, pp. 59-60 & 66).

*Regarded as Disabled*

A plaintiff must show that (1) she has a disability, (2) she is a qualified individual, and (3) she was discriminated against by her employer because of her disability.  See Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1255-56 (11th Cir. 2007); D'Angelo v. Conagra Foods, Inc., 422 F.3d 1220, 1226 (11th Cir. 2005).  A plaintiff may seek to prove a disability under the "regarded as" clause of the ADA.  42 U.S.C. §12102(2) (2008).  To establish discrimination on the basis of a perceived disability, the plaintiff must show that she (1) "has an impairment that does not substantially limit a major life activity, but is treated by an employer as though it does; (2) has an impairment that limits a major life activity only because of others' attitudes towards the impairment; or (3) has no impairment whatsoever, but is treated by an employer as having a disability as recognized by the ADA."  29 C.F.R. §1630.2(l) (2008); Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1230 (11th Cir. 1999).  The plaintiff must also show that the employer believed that the impairment substantially limited a major life activity.  Hilburn, 181 F.3d at 1230; Quitto v. Bay Colony Golf Club, Inc., No. 2:06-cv-286-FtM-29DNF, 2007 WL 2002537, at *10 (M.D. Fla. Jul. 5, 2007).  With respect to the major life activity of working, "substantially limited" means that the employee must be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  29 C.F.R. §1630.2(j)(3)(I).   If a job is available that uses an individual's skills, then that

individual is not "substantially limited" in the major life activity of working.  See Cash v. Smith, 231 F.3d 1301, 1306 (11th Cir. 2009).

Contrary to Plaintiff's assertions that all of her physicians stated that she could return to work at full duty, Dr. Wasylik released her to work with restrictions.  Dr. Wasylik permitted her to return to work as long as she was not lifting above her head.  Defendant's letter of January 14, 2008, is unrefuted evidence that the Defendant believed Plaintiff could perform a broad range of other positions, ones that did not include overhead lifting.[2]  The letter specifically requests that Plaintiff contact a particular person at a specific number to obtain a different position, one that did not include overhead lifting.  Plaintiff never did comply with the request.

Even assuming she was regarded as disabled by Defendant, which she was not, Plaintiff was not denied a reasonable accommodation because she never demanded any accommodation.[3]  See Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363-64 (11th Cir. 1999) (holding that demand must be made to trigger need for accommodation).  Plaintiff's lawyer's letter of January 16, 2008, does not request the use of a stool for overhead filing.  See Brown v. Secretary of Fla. Dep't of Corr., No.

---

[2] See Prince v. Jefferson County Police Dep't, No. 3:99CV-161-S, 2000 WL 33975209, at *2 (W.D. Ky. May 25, 2000) (finding that police department's consideration of individual precluded from position as police officer refers to only one particular job and not broad class of jobs and therefore individual was not regarded as disabled).

[3] To the extent that Plaintiff attempts to argue that the requirement of overhead lifting no longer existed in her job, the record does not support this contention.

4:05cv497-RH/WCS, 2009 WL 530103, at *8 (N.D. Fla. Feb. 27, 2009) (finding that no evidence of plaintiff's request for an accommodation relieved employer of duty to change the essential functions of the job of corrections officer). None of her physicians indicated that the use of a step stool would in fact alleviate the restriction of overhead filing.[4] Based on the record, Plaintiff has not established a prima facie case of discrimination under the ADA.

*Retaliation*

To establish retaliation, the Plaintiff must show that (1) she engaged in statutorily protected activity, (2) she suffered a materially adverse action, and (3) a causal connection exists between the protected activity and the alleged adverse action. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006); Crosby v. Mobile County Pers. Bd., 2007 WL 245126, at *4 (11th Cir. 2007) (unpublished opinion). The second prong, that she suffered a materially adverse action, is analyzed using an objective reasonableness standard as opposed to the employee's subjective view. Burlington, 548 U.S. at 68. The third prong, the causal connection, is determined by whether a "very close" temporal proximity exists between the protected activity and the adverse action. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268,

---

[4] Plaintiff's attempt to rely on Dr. Gupta's notes in which he states that she told him that she wanted to have a standing stool, as a demand or request for a step stool to her employer, is of no avail. His notes provide that "[s]he demanded that I change that she does not need any restrictions. I told her that it was her who wanted to have a standing stool, so she does not have to lift her left shoulder." (Dkt. 27, Exh. 4, p.2 ).

273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001); Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007).

Defendant concedes for purposes of summary judgment that the 2006 filing with the EEOC constitutes statutorily protected activity and the placement of Plaintiff on workers' compensation constitutes a materially adverse action. The slightly lesser score resulting in "excellent" as opposed to "outstanding," however, does not constitute a materially adverse action because it did not affect the terms or conditions of her employment. See DaCosta v. Birmingham Water Works & Sewer Bd., 256 Fed. Appx. 283, 287-88 (11th Cir. 2007) (unpublished opinion) (holding that plaintiff failed to show how lower evaluations prevented him from receiving promotions or loss of salary); Brown v. Snow, 440 F.3d 1259, 1265-66 (11th Cir. 2006) (holding that lower score on performance evaluation alone is not actionable unless it is connected to another adverse action). Moreover, the actions of posting her photograph at the reception area or breaking the locks to gather her belongings do not constitute materially adverse action because the conduct was not harmful enough to "well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington, 548 U.S. at 57. Consequently, temporal proximity is lacking. The charge of discrimination occurred in 2006, and the placement of Plaintiff on workers' compensation occurred in early 2008, well over a year and a half apart.

Even assuming Plaintiff could have shown a prima facie case of retaliation, Defendant presented a legitimate, non-retaliatory reason for placing Plaintiff on workers'

compensation— Dr. Wasylik's report that she could not perform overhead lifting, which was an essential function of her job. The receipt of lesser points on the 2007 evaluation was the result of repeated failures to follow the chain of command with the office, which is stated on the face of the evaluation. The posting of her photograph and the gathering of her personal belongings served to prevent her from violating the order not to return to work. These procedures were typically followed under these circumstances.

It is therefore **ORDERED AND ADJUDGED** as follows:

(1) Defendant's Motion for Summary Judgment (Dkt. 25) is **GRANTED**.

(2) The clerk is directed to enter judgment in favor of Defendant.

(3) The clerk is directed to close this case.

**DONE AND ORDERED** at Tampa, Florida, on June 22, 2010.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

<u>COPIES FURNISHED TO</u>:
Counsel of Record